UNPUBLISHED

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

REAL COLOR DISPLAYS,
INCORPORATED,
Plaintiff-Appellee,

v.

No. 97-1212

UNIVERSAL APPLIED TECHNOLOGIES
CORPORATION, d/b/a Automated
News Vending Systems,
Defendant-Appellant.

Appeal from the United States District Court
for the Eastern District of North Carolina, at Raleigh.
Malcolm J. Howard, District Judge.
(CA-96-607-5-H)

Argued: September 21, 1998

Decided: October 30, 1998

Before NIEMEYER and MOTZ, Circuit Judges, and
BUTZNER, Senior Circuit Judge.

_____

Affirmed by unpublished opinion. Judge Niemeyer wrote the opinion,
in which Judge Motz and Senior Judge Butzner joined.

_____

**COUNSEL**

**ARGUED:** Scott Gregory Crowley, CROWLEY & CROWLEY,
Richmond, Virginia, for Appellant. James Anthony Penry, SMITH,
HELMS, MULLISS & MOORE, L.L.P., Raleigh, North Carolina, for

Appellee. **ON BRIEF:** Stephen D. Kiess, EVERETT, WARREN, HARPER & SWINDELL, Greenville, South Carolina; Noel C. Crowley, CROWLEY & CROWLEY, Morristown, New Jersey, for Appellant. Tracy Hamrick Davis, Matthew W. Sawchak, SMITH, HELMS, MULLISS & MOORE, L.L.P., Raleigh, North Carolina, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

NIEMEYER, Circuit Judge:

This appeal presents us with the questions of whether two merchants, in the context of a commercial transaction, agreed in writing to submit disputes regarding the transaction to arbitration, and if so, whether one of the parties, who had notice of, but failed to appear at, an arbitration hearing was time-barred by the Federal Arbitration Act (the "FAA" or the "Act"), 9 U.S.C. § 12, when it filed a motion to vacate the adverse arbitration award more than three months after receiving the award. The district court denied the challenge to the arbitration award as untimely and entered judgment confirming the award. We affirm.

I

Real Color Displays, Inc., a North Carolina corporation, with its principal place of business in Durham County, North Carolina, manufactures and sells light emitting diode ("LED") electronic display boards. In early December 1994, Universal Applied Technologies Corporation, a Texas corporation with its principal place of business in San Antonio, requested pricing information from Real Color for a custom-made LED display board for installation in newspaper vending machines manufactured by Universal.

On December 5, 1994, Real Color provided Universal with a three-page "Offer and Agreement for Sale of Products," designated "Offer

2

Number 5011." Offer 5011, which included a December 30, 1994 expiration date, contained price quotations for a "Custom RC880 7 x 80 pixels" LED display board in quantities of 100, 500, 1000, or 3000 boards based on a single order, "F.O.B. Hong Kong." The unit price quoted for an order of 3000 boards was $126 each. Paragraph 13 of Offer 5011 made the following provision for arbitration:

> Any controversy or claim (including, without limitation, any claim based on negligence, misrepresentation, strict liability or other basis) arising out of or relating to this Agreement, or its performance or breach, which involves an amount in excess of $50,000 (exclusive of interest and costs) shall be settled by arbitration in the City of Raleigh, North Carolina, in accordance with the rules of the American Arbitration Association. The decision in such arbitration shall be final and binding and any other award rendered thereon may be entered in any court having jurisdiction.

On February 7, 1995, Universal sent a "Purchase Order" to Real Color, which, by twice referring to "Offer 5011," ordered 3,000 "Custom RC 880" LED units at $126 per unit, F.O.B. Hong Kong, the price quoted in Offer 5011. Universal's purchase order directed Real Color to ship six of the LED boards by February 20, 1995, 500 in April, and the remainder "to be scheduled on standard shipments." The purchase order contained no text or conditions other than to accept Real Color's offer.

In accordance with Universal's purchase order, Real Color delivered six custom boards to Universal in February 1995, and Universal paid for these units in full. Real Color delivered another 500 LED boards in March 1995. By June 1995, however, Universal still had failed to pay for the March delivery, despite its ongoing promises to make the payment, and therefore, Real Color stopped a June shipment of boards en route. Universal made no further payments to Real Color. Real Color was able to resell some of the custom-made LED boards, but it took a loss in selling them.

In February 1996, Real Color invoked the arbitration clause and submitted its claim for payment and damages against Universal to the American Arbitration Association ("AAA"). The AAA accordingly

3

scheduled an arbitration hearing for May 23, 1996, in Raleigh, North Carolina. Although Universal acknowledged receiving a copy of the arbitration demand and the AAA corresponded with both Real Color and Universal on four separate occasions before the hearing regarding preparations, a fact that Universal does not deny, Universal failed to appear at the arbitration hearing on May 23.

The hearing proceeded as scheduled and the AAA-appointed arbitrator entered an award in favor of Real Color on June 5, 1996, for approximately $212,000, mailing a copy of the award to both Real Color and Universal on June 7, 1996. Universal received its copy of the award on June 11, 1996.

During the second or third week in June 1996, Real Color received a curious letter from Universal, dated June 6, 1996, and post-marked June 13, 1996, expressing Universal's desire to return some defective LED boards that it had previously received from Real Color. The letter went on to state:

> [We] received correspondence recently from the American Arbitration Association. We have never agreed that this matter will be resolved in arbitration. We seek resolution between our companies and their normal channels.

In July 1996, Real Color commenced this diversity action against Universal, seeking court confirmation of its arbitration award in accordance with § 9 of the FAA. On September 18, 1996, more than three months after receiving the arbitration award, Universal filed a motion to vacate the award, contending that "there was no agreement to arbitrate" and that Real Color failed to obtain a court order under 9 U.S.C. § 4 to compel the arbitration. The district court denied Universal's motion to vacate the award as untimely. The court also ruled that Universal entered into a binding arbitration agreement with Real Color and that Real Color was not obligated to obtain a court order to arbitrate before proceeding to arbitration. From the court's judgment confirming the award in favor of Real Color, this appeal followed.

II

Universal contends principally that it did not enter into a binding agreement to arbitrate because it did not sign Real Color's offer to sell

4

LED boards and because Real Color's offer, together with the arbitration clause, expired by its terms on December 30, 1994. Universal notes that its subsequent purchase order for the boards, dated February 7, 1995, was the basis for the parties' dealings, and that its purchase order did not have an arbitration clause.

Universal fails, however, to account for the fact that its purchase order, which it did sign, specifically accepted Real Color's earlier offer. Universal's purchase order specifically referred to Real Color's Offer 5011 and agreed to pay the price quoted in Offer 5011 -- 3,000 custom-made LED boards at $126 per unit, F.O.B. Hong Kong. Offer 5011 represented Real Color's offer to enter into a binding agreement, and Universal's purchase order, by referring explicitly to Offer 5011 and its terms, amounted to an acceptance of that offer. See N.C. Gen. Stat. §§ 25-2-204, 25-2-206, 25-2-208 (1995). The fact that Universal accepted Real Color's offer after December 30, 1994, is of no consequence under the facts of this case. Real Color waived compliance with that condition by actually shipping LED boards to Universal in accordance with Universal's schedule. See Caver v. Britt, 85 S.E.2d 888 (N.C. 1955) (holding that performance permits an offerer to waive a condition contained in a prior written offer). Moreover, Universal's receipt of shipments, without objection, demonstrates further its assent to be bound by the terms and conditions of Real Color's offer. See N.C. Gen. Stat. § 25-2-208(1).

The Federal Arbitration Act represents a source of federal substantive law for the enforcement of arbitration agreements. Whether a party agrees to arbitrate, however, is an issue for judicial determination by application of common law principles of contract law. See Johnson v. Circuit City Stores, 148 F.3d 373, 377 (4th Cir. 1998). But questions regarding a matter's arbitrability, including disputes regarding contract interpretation and defenses to arbitrability, "must be addressed with a healthy regard for the federal policy favoring arbitration." Moses H. Cone Mem'l Hosp. v. Mercury Construction Corp., 460 U.S. 1, 24 (1983). We agree with the district court in this case that the writings between the parties, coupled with their subsequent conduct, established the existence of a contract based on Real Color's Offer 5011 and Universal's purchase order. This contract included paragraph 13 in Offer 5011 providing for the arbitration of disputes.

5

III

Universal also contends that Real Color violated its rights by not filing a motion in the district court under 9 U.S.C. § 4 to compel arbitration before actually proceeding with the arbitration. That section provides that a "party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration <u>may</u> petition any United States district court . . . for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4 (emphasis added).

In the case before us, there is no indication that Real Color had any need to use § 4. When it demanded arbitration, the AAA scheduled a hearing, and Universal made no objection; it never took a position before the scheduled hearing date that the arbitration was not authorized. Rather, Universal elected simply not to appear at the hearing. This is not a circumstance under which it can be expected that Real Color would invoke § 4 to compel arbitration by court order.

More importantly, however, as we have recognized previously, the language of § 4 is permissive and not mandatory. It provides a method by which arbitration <u>may</u> be compelled, but this authorization is not mandated as a condition to enforcement of arbitration. In <u>Sverdrup Corp. v. WHC Constructors, Inc.</u>, 989 F.2d 148 (4th Cir. 1993), we rejected a similar argument, noting that "the use of alternating and permissive and mandatory language throughout the [Federal Arbitration Act] indicates that Congress was cognizant of the difference in the meaning between `may' and `must' and intended that the term `may' must be construed as permissive." <u>Id.</u> at 151.

Universal provides no compelling justification for construing 9 U.S.C. § 4 to impose an obligation of the parties to seek judicial approval before pursuing contractual arbitration rights. Indeed, to do so would reduce the judicially favored efficiency that otherwise exists in the vast majority of arbitrations.

IV

Finally, Universal contends that the AAA arbitrator violated its due process rights by failing to notify it of the three-month deadline

6

imposed by 9 U.S.C. § 12. Universal asserts, therefore, that § 12 does not apply in this case.

Section 12 provides that "[n]otice of a motion to vacate, modify or correct an award <u>must be served</u> upon the adverse party or his attorney <u>within three months</u> after the award is filed or delivered." 9 U.S.C. § 12 (emphasis added). The language in § 12, unlike what we observed about § 4, is mandatory. Accordingly, a motion to vacate filed more than three months after Universal received the award is time-barred. <u>See Sverdrup</u>, 789 F.2d at 151. Moreover, the three-month deadline imposed by § 12 applies even though the opposing party has filed a motion to confirm under 9 U.S.C. § 9. <u>See Taylor v. Nelson</u>, 788 F.2d 220, 225 (4th Cir. 1986).

Universal does not dispute that it received notice from the AAA of the adverse arbitration award on June 11, 1996, and that it failed to file its motion to vacate within three months. It argues, rather, that the AAA wrongfully failed to give Universal notice of § 12's requirements. This argument is without merit. The statute puts Universal on unambiguous notice about the requirement to file its motion within three months, and there is no additional requirement in the FAA that an arbitrator provide a copy of the statute to merchants, repeating to them their rights and obligations under the Act. The failure of the AAA to provide this information certainly cannot be considered a due process violation.

The judgment of the district court is

<u>AFFIRMED</u>.

7